IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PETRU MIRONESCU,                           )
                                           )
            Petitioner,                    )
                                           )
      v.                                   )          1:05CV00683
                                           )
                                           )          Related Cases: 1:04CV00022
                                           )                         1:03MJ00205-1
THE HONORABLE CONDOLEEZZA )
RICE, United States Secretary of State,    )
HARLON E. COSTNER, United States           )
Marshal for the Middle District of North   )
Carolina, and WILLIAM SCHATZMAN, )
Sheriff of Forsyth County,                 )
                                           )
            Respondents.                   )


MEMORANDUM OPINION

BEATY, District Judge.

I.     INTRODUCTION

       Petru Mironescu ("Petitioner") is a citizen of Romania who has petitioned this Court for

a writ of habeas corpus following a decision by the U.S. Secretary of State[1] ("Secretary") to

extradite him to the Country of Romania. Romania has asked for Petitioner's extradition so that

he may serve a four-year sentence for entering a partnership to commit auto theft, instigating

aggravated theft, and bringing a motor vehicle into traffic with false license plates. Petitioner's

_____

       [1] The Government states that the warrant for Petitioner's extradition was signed by the
Deputy Secretary of State, pursuant to a formal delegation of authority by the Secretary. See 70
Fed. Reg. 30,180 (May 25, 2005).

writ is based upon Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (hereinafter, "CAT"), a valid and binding treaty of the United States, and its implementing legislation known as the Foreign Affairs Reform and Restructuring Act of 1998 (hereinafter, "FARR Act"), Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-761, 2681-822 (codified as 8 U.S.C. § 1231 note). Petitioner argues that if he is returned to Romania, he will likely be tortured. Petitioner asks this Court to review the decision of the Secretary to extradite him under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06. The Government has filed a Motion to Dismiss Petitioner's Writ of Habeas Corpus [Document #10]. The Government argues that Petitioner's writ of habeas corpus is barred by a doctrine known as the Rule of Non-Inquiry, as well as the FARR Act itself. The Government has also asked this Court, in its Motion to Dismiss, to remove the Secretary of State as a party from the caption of the case. Petitioner has also asked for bail pending appeal, which the Government also opposes.

## II.    PROCEDURAL BACKGROUND

Petitioner is currently in the custody of Respondent Harlon E. Costner, the United States Marshal for the Middle District of North Carolina. He is being detained in the Forsyth County Detention Center, 201 N. Church Street, Winston-Salem, North Carolina. Respondent William Schatzman is the Sheriff of Forsyth County and is in control of the Forsyth County Detention Center. Petitioner is being held pursuant to a provisional warrant issued at the request of the Secretary upon the request of Romania for Petitioner's extradition. Petitioner is also being held

2

pursuant to an Order, issued by the Honorable Wallace W. Dixon, United States Magistrate Judge for the Middle District of North Carolina, certifying his extradition to the Secretary. This Order was filed on December 9, 2003, in Case No. 1:03M205-1.

Petitioner filed a previous petition for a writ of habeas corpus on January 16, 2004, in Case No. 1:04CV00022. This Court denied that petition, without prejudice, in an Order dated November 9, 2004. In that Order, the Court adopted the Magistrate Judge's Recommendation that Petitioner's certification for extradition was valid and that the extradition treaty between the United States and Romania applied. Furthermore, the Court agreed with the Magistrate Judge that within the narrow habeas review permitted by the Fourth Circuit Court of Appeals of an extradition certification, no review was then allowed to consider Petitioner's evidence of a violation of Article 3 of the CAT, at least prior to the Secretary's final determination of whether to extradite Petitioner. (Order, Nov. 9, 2004, at 2.) The Court left open the question of whether habeas review of Petitioner's evidence was permitted after the Secretary's final determination of Petitioner's status, and specifically required the Government to provide Petitioner with notice of any surrender warrant so as to allow Petitioner time to seek additional habeas relief. (Id. at 4.) Now that the Secretary has, in fact, determined that the CAT does not bar Petitioner's extradition, that question, that is, whether this Court may review the Secretary's determination, is squarely before the Court based upon Petitioner's second writ of habeas corpus.

However, before reaching the merits of the Government's Motion to Dismiss, the Court

3

will first consider the two other motions raised by the parties. Those two other motions are whether Petitioner should receive bail pending appeal and whether U.S. Secretary of State Condoleezza Rice is an appropriate party to be listed on the caption of this case.

III.    BAIL PENDING APPEAL

Petitioner contends that he should be released from custody because more than two months passed between the time that the Government filed a notice of appeal (April 1, 2005) with the Fourth Circuit Court of Appeals of this Court's November 9, 2004 Order and the date when the Government filed a Motion for Voluntary Dismissal of that Appeal (July 5, 2005). During that intervening period, Petitioner asserts that the Government failed to diligently pursue its appeal. Petitioner makes this argument according to the authority of 18 U.S.C. § 3188. That section provides:

> Whenever any person who is committed for rendition to a foreign government to remain until delivered up in pursuance of a requisition, is not so delivered up and conveyed out of the United States within two calendar months after such commitment . . . any judge of the United States, or of any State, upon application made to him by or on behalf of the person so committed, and upon proof made to him that reasonable notice of the intention to make such application has been given to the Secretary of State, may order the person so committed to be discharged out of custody, unless sufficient cause is shown to such judge why such discharge ought not to be ordered.

While Petitioner admits that his habeas petitions have delayed his surrender to Romania, Petitioner contends that the delay caused by the Government's appeal from this Court's November 9, 2004 Order "should not be excluded from the running of the sixty day period."

4

(See Petition at 39.) In response, the Government asserts that Petitioner misstates the law regarding when the two-month period begins, and in any event, "sufficient cause" exists to deny release of Petitioner even if the statutory period has passed.

The Court finds that the two-month period of 18 U.S.C. § 3188 has not yet begun to run, because Petitioner's claims have not yet been "finally adjudicated." See Marcos Perez Jimenez v. United States Dist. Court, 84 S. Ct. 14, 18 (1963) ("[W]here as here, the accused has instituted and pursued review of his extradition order, the two-month period runs from the time his claims are finally adjudicated, not from the time of the original commitment order he has been challenging."). Alternatively, the Court finds that "sufficient cause" exists to deny release while this appeal is pending, considering that the Secretary has certified Petitioner for extradition, which has not yet occurred only because of this writ of habeas corpus. Accordingly, Petitioner's Motion for Bail Pending Appeal is denied.

## IV. LISTING OF SECRETARY OF STATE AS A NAMED PARTY

The Government argues in its Motion to Dismiss that regardless of this Court's ruling as to the availability of habeas review, the U.S. Secretary of State should be dismissed as a respondent herein, and that the caption of this case should be changed to reflect her dismissal. The Government states that the only proper respondent on a habeas petition is the officer having immediate custody of the Petitioner. The Government cites to both the federal habeas statute, 28 U.S.C. § 2242, and Rumsfeld v. Padilla, 542 U.S. 426, 434-35, 124 S. Ct. 2711, 2717 (2004) for this proposition.

5

The federal habeas statute, 28 U.S.C. § 2242, states that the proper respondent is "the person who has custody over [petitioner]." In Padilla, the U.S. Supreme Court held, in rejecting the idea that Secretary of Defense Donald Rumsfeld was the proper respondent because he determined whether Jose Padilla was to be held as an "enemy combatant," that "[i]n challenges to present physical confinement, . . . the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." Padilla, 542 U.S. at 439, 124 S. Ct. at 2720. The court went on to state that "[i]f the 'legal control' test applied to physical-custody challenges, a convicted prisoner would be able to name the State or the Attorney General as a respondent to a § 2241 petition. As the statutory language, established practice, and our precedent demonstrate, that is not the case." Id. at 439-40, 124 S. Ct. at 2720. Based upon this language, this Court finds that the Secretary of State is not a proper respondent in this matter, because the Secretary is not the immediate custodian of Petitioner, and will accordingly be dismissed. As such, the caption of this matter shall also be changed to reflect the dismissal of the Secretary of State as a respondent.

V.    MOTION TO DISMISS

Before the Court considers the arguments in both the Government's Motion to Dismiss and Petitioner's Writ of Habeas Corpus, the Court will detail the statutes and common law concerning the Rule of Non-Inquiry and the FARR Act. The Rule of Non-Inquiry is a doctrine in which the federal courts have historically refused to consider the conditions of the penal systems of requesting nations, such as Romania, and instead deferred to the Secretary's decision

6

concerning whether an individual would be treated humanely by the requesting nation.  See

Lopez-Smith v. Hood, 121 F.3d 1322, 1326 (9th Cir. 1997).  However, in 1998, Congress passed

legislation, known as the FARR Act, to implement Article 3 of the CAT.[2]  This implementing

legislation states that "[i]t shall be the policy of the United States not to expel, extradite, or

otherwise effect the involuntary return of any person to a country in which there are substantial

grounds for believing the person would be in danger of being subjected to torture, regardless of

whether the person is physically present in the United States."  FARR Act, § 2242(a).  The

FARR Act goes on to state that "[n]otwithstanding any other provision of law . . . no court shall

have jurisdiction to review the regulations adopted to implement this section, and nothing in this

---

[2] Article 3 of the United Nations Convention Against Torture provides:

> 1.  No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

> 2.  For the purpose of determining whether there are such grounds, competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, adopted by unanimous agreement of the U.N. General Assembly, G.A. Res. 39/46, 39 U.N. GAOR, 39th Sess., Supp. No. 51 at 197, U.N. Doc. A/RES/39/46 (1984).

This Convention was adopted by the United Nations General Assembly on December 10, 1984.  It was signed by the United States on April 18, 1988, and entered into force as to the United States on November 20, 1994.  See Cornejo-Barreto v. Seifert, 218 F.3d 1004, 1011 (9th 2000).

7

section [this note] shall be construed as providing any court jurisdiction to consider or review claims raised under this Convention or this section [this note], or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252)." Id. § 2242(d).

The FARR Act also required the Department of State to prescribe regulations as to the obligations of the United States under Article 3 of the CAT. The Department of State did in fact set forth implementing regulations. Those regulations state, in relevant part:

> § 95.2 Application
> (b) Pursuant to sections 3184 and 3186 of Title 18 of the United States Criminal Code, the Secretary is the U.S. official responsible for determining whether to surrender a fugitive to a foreign country by means of extradition. In order to implement the obligation assumed by the United States pursuant to Article 3 of the Convention, the Department considers the question of whether a person facing extradition from the U.S. "is more likely than not" to be tortured in the State requesting extradition when appropriate in making this determination.
>
> § 95.3 Procedures
> (a) Decisions on extradition are presented to the Secretary only after a fugitive has been found extraditable by a United States judicial officer. In each case where allegations relating to torture are made or the issue is otherwise brought to the Department's attention, appropriate policy and legal offices review and analyze information relevant to the case in preparing a recommendation to the Secretary as to whether or not to sign the surrender warrant.
> (b) Based on the resulting analysis of relevant information, the Secretary may decide to surrender the fugitive to the requesting State, to deny surrender of the fugitive, or to surrender the fugitive subject to conditions.

8

§ 95.4 Review and construction.
Decisions of the Secretary concerning surrender of fugitives for extradition are matters of executive discretion not subject to judicial review. Furthermore, pursuant to section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998, P.L. 105-277, notwithstanding any other provision of law, no court shall have jurisdiction to review these regulations and nothing in section 2242 shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or section 2242, or any other determination made with respect to the application of the policy set forth in section 2242(a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252), which is not applicable to extradition proceedings.

22 C.F.R. § § 95.2-95.4.

The Government's position is that the Rule of Non-Inquiry as to extradition decisions remains unchanged by the CAT and the FARR Act, and that the FARR Act and its implementing regulations specifically state that this Court has no jurisdiction over the matter. However, Petitioner's position is that the Secretary's decision to extradite is no longer discretionary, and in fact, the FARR Act requires the Secretary not to extradite an individual if that individual can show it is more likely than not he will be tortured. Accordingly, Petitioner argues such a non-discretionary decision may be reviewed by this Court under the APA. The Government has filed a Motion to Dismiss. However, before the Court details the Government's position with respect to the Motion to Dismiss, the Court will first consider Petitioner's position.

9

A. Petitioner's Position and Authority

Petitioner argues that this Court should follow the rule of <u>Cornejo-Barreto v. Seifert</u>, 218 F.3d 1004 (9th 2000) ("<u>Cornejo Barreto I</u>") to determine that Petitioner has a right to judicial review under the APA. <u>Cornejo-Barreto I</u>, once disapproved of in the Ninth Circuit Court of Appeals, has now sprung back to life and remains good law. <u>See</u> <u>Prasoprat v. Benov</u>, 421 F.3d 1009, 1012 n.1 (9th Cir. 2005) ("The holding in <u>Cornejo-Barreto I</u> was disapproved of by <u>Cornejo-Barreto v. Siefert</u>, 379 F.3d 1075 (9th Cir. 2004) ("<u>Cornejo-Barreto II</u>"). The en banc court, however, later vacated <u>Cornejo-Barreto II</u> and denied the government's request to vacate <u>Cornejo-Barreto I</u>. <u>Cornejo-Barreto v. Siefert</u>, 389 F.3d 1307 (9th Cir. 2004) (en banc)."). In <u>Cornejo-Barreto I</u>, the Ninth Circuit Court of Appeals stated that the APA allows an individual who is facing extradition to petition under habeas corpus for review of the Secretary's determination to surrender him.

More specifically, the court in <u>Cornejo-Barreto I</u> found that the long-standing Rule of Non-Inquiry applied by federal courts to extradition decisions of the Secretary had been modified by the FARR Act. <u>Cornejo-Barreto I</u>, 218 F.3d at 1015. Prior to the FARR Act, the Rule of Non-Inquiry barred all such review. <u>Id.</u> at 1010. However, after the implementation of the FARR Act, instead of refusing all review of the issue, the Ninth Circuit found that the FARR Act itself permitted judicial review of the Secretary's "implementation of the Torture Convention," although it might "limit judicial review of the regulations she promulgates." <u>Id.</u> at 1013. Accordingly, the Ninth Circuit then considered how such review might be possible.

10

The court began by considering whether the APA would be applicable to a decision made by the Secretary of State. The Ninth Circuit considered the fact that the APA "governs decision-making by most federal agencies." <u>Id.</u> at 1012. The APA "guarantee[s] . . . judicial review by federal courts of 'final agency action for which there is no other adequate remedy in a court.'" <u>Id.</u> at 1015; 5 U.S.C. § 704. Accordingly, the Ninth Circuit decided that the Secretary's determination as to extradition was a final agency action without other adequate remedy in a court.

The court then stated that, under the APA, agency actions are reviewable "except to the extent that – (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). In <u>Cornejo-Barreto I</u>, the Ninth Circuit found first that the FARR Act did not specifically preclude judicial review of the implementation of that statute, but may have done so as to its regulations. <u>Id.</u> at 1013. As to the second question, the court noted that agencies:

> [A]re given a mandatory duty to implement Article 3 of the Torture Convention . . . . In the extradition context, this means that the Secretary of State may not surrender any fugitive who is likely to face torture upon return. The FARR Act imposes a clear and nondiscretionary duty: the agencies responsible for carrying out expulsion, extradition, and other involuntary returns, must ensure that those subject to their actions may not be returned if they are likely to face torture. A reviewing court would have a clear standard against which to measure the Secretary's actions . . ."

<u>Cornejo-Barreto I</u>, 218 F.3d at 1013-14. The Ninth Circuit then noted that, despite the mandatory language in the FARR Act, according to the Secretary's own regulations, the duty

11

imposed by FARR Act was *discretionary*. The court then stated that although it must generally

defer to an agency's construction of a statute it administers, <u>see</u> <u>Chevron U.S.A. Inc. v. NRDC</u>,

467 U.S. 837, 842-43, 104 S. Ct. 2778, 2782 (1984), it must also reject "those interpretations that

are contrary to Congressional intent." <u>Cornejo-Barreto I</u>, 218 F.3d at 1014. This was, in fact,

a case where the Ninth Circuit found the regulations to be wanting, because the court

determined that the Secretary had no discretion to extradite if the Secretary determined that an

individual would likely be tortured upon return to the requesting state.

> Finding that the Secretary's duty to implement the FARR Act is
> non-discretionary and that the statute does not preclude review, we
> hold that a fugitive fearing torture may petition for review of the
> Secretary's decision to surrender him. Courts reviewing such
> petitions will be required to set aside the Secretary's extradition
> decisions if they are found to be 'arbitrary, capricious, an abuse of
> discretion, or otherwise not in accordance with law.'

<u>Id.</u> at 1015; 5 U.S.C. § 706(2)(a).

The Ninth Circuit went on to consider the form of review available. The court found

that the review portion of the FARR Act, § 2242(d), prohibits courts from reading an implied

cause of action into the statute. <u>Id.</u> Additionally, the court noted that the APA is not "an

independent grant of jurisdiction." <u>Id.</u> Accordingly, the court found that "[s]ince there is no

statutory review provision applicable to FARR claims, and since potential extraditees meet the

other requirements for habeas standing under 28 U.S.C. § 2241, a habeas petition is the most

appropriate form of action for fugitives seeking review of the Secretary's extradition decisions."

<u>Id.</u> at 1015-16. The court noted in a footnote that the FARR Act did not limit habeas corpus

review, and that courts (and Congress) may not repeal habeas jurisdiction by implication.  See

Felker v. Turpin, 518 U.S. 651, 660-61, 116 S. Ct. 2333, 2339 (1996).  Finally, the Ninth Circuit

stated that since the APA provides review for only final agency action, see 5 U.S.C. § 704, a

challenge to the Secretary's extradition decision may only be brought after the Secretary has

made such a decision, and not before.

B.  The Government's Position and Authority

The Government in its Motion to Dismiss argues that review under the APA is precluded

by the language in the FARR Act, the history of the Rule of Non-Inquiry, and by several

provisions of the APA itself.  First, the Government argues that, as previously stated, the FARR

Act provides that "[n]otwithstanding any other provision of law," nothing in the statute is to be

construed as providing jurisdiction to "consider or review claims raised under the Convention

or this section, . . . or any other determination made with respect to the application of the policy

set forth in subsection (a), except as part of the review of a final order of removal pursuant to

[the INA]."  This language, according to the Government, evidences a clear congressional intent

to preclude judicial review, in the FARR Act, of the Secretary's determination as to extradition.

Second, the Government notes that the APA was enacted in 1946.  The Government then

states that much of the case law establishing the Rule of Non-Inquiry was decided after that

year.[3]  Therefore, the Government argues that courts should be skeptical of arguments for the

---

[3] The Court notes that the Government's assertion that much of the case law concerning the Rule of Non-Inquiry was decided after 1946 is incorrect.  U.S. Supreme Court decisions establishing the Rule of Non-Inquiry (perhaps not stated as such) go back as far as 1901, see

"sudden discovery" of "new, revolutionary meaning in reading an old judiciary enactment." Romero v. International Terminal Operating Co., 358 U.S. 354, 370, 79 S. Ct. 468, 479 (1959).

Third, the Government states that several provisions of the APA itself foreclose judicial review of extradition decisions. The Government points out that the section of the APA that provides for a right of review also says: "Nothing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground . . . ." 5 U.S.C. § 702. The Government argues that this provision includes both express and implied preclusions of judicial review, and cites to Saavedra Bruno v. Albright, 197 F.3d 1153, 1158 (D.C. Cir. 1999), for the idea that the Administrative Conference of the United States, in adopting this language for the APA, stated that the courts would "refuse to decide issues about foreign affairs, military policy and other subjects inappropriate for judicial action." Id. (internal quotations omitted). This, the Government states, would include the Rule of Non-Inquiry regarding extradition determinations.

Additionally, the Government argues that the APA provides that judicial review is precluded where "statutes preclude judicial review," or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (2). In order for a statute to preclude judicial

---

Neely v. Henkel, 180 U.S. 109, 21 S. Ct. 302 (1901) and arguably as far as 1890, see In re Oteiza y. Cortes, 136 U.S. 330, 334, 10 S. Ct. 1031 (1890); see also Jacques Semmelman, Federal Courts, the Constitution, and the Rule of Non-Inquiry in International Extradition Proceedings, 76 Cornell L. Rev. 1198, 1210-14 (1991) ("The rule of non-inquiry thus initially arose by implication, originating in the fact that 'the procedures which will occur in the demanding country subsequent to extradition were not listed [by the Supreme Court] as a matter of a federal court's consideration.'" (quoting Gallena v. Fraser, 278 F.2d 77, 79 (2d Cir. 1960)).

review, it need not expressly bar judicial review, but may instead bar judicial review merely by the "collective import of legislative and judicial history behind a particular statute [or] . . . by inferences of intent drawn from the statutory scheme as a whole." Block v. Community Nutrition Institute, 467 U.S. 340, 349, 104 S. Ct. 2450, 2455-56 (1984) (citations omitted). The Government states that this exception to judicial review applies here because the extradition statute allegedly gives the Secretary non-reviewable discretion over the ultimate decision about extradition, see 18 U.S.C. §§ 3184 ("If, on such hearing, [the magistrate judge] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, . . . he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State . . . ."), and because the courts' repeated application of the Rule of Non-Inquiry constitutes a "judicial history" of not reviewing the Secretary's determinations.

Further, the Government argues that the Secretary's decision is discretionary, as evidenced by the language of the CAT itself, which states that the obligation of the United States under the CAT is to refuse extradition if the "competent authorities," taking into account "all relevant considerations," determine that there are "substantial grounds" for believing that there is a danger of torture. The Government then cites to Webster v. Doe, 486 U.S. 592, 600, 108 S. Ct. 2047, 2052 (1988) for the proposition that such a standard "fairly exudes deference" to the decisionmaker.[4]

_____

[4] The Court notes at this time that what Webster actually states is: "As an initial matter, it should be noted that § 102(c) allows termination of an Agency employee whenever the Director 'shall deem such termination necessary or advisable in the interests of the United

15

Finally, the Government argues that requiring the Secretary to produce the administrative record of her extradition determination would undermine the point of the Rule of Non-Inquiry, severely damage the United States' foreign policy interests by potentially being seen as raising questions about the requesting country's institutions or commitment to the rule of law, and add further delays to an already lengthy extradition process. The Government then cites to Blaxland v. Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1208 (9th Cir. 2003) for the statement that, "Extradition treaties have produced a global network of bilateral executive cooperation that aims to prevent border crossing from becoming a form of criminal absolution. Unwarranted expansion of judicial oversight may interfere with foreign policy and threaten the ethos of the extradition system." Id.

C.  Discussion of Both Positions

The Court notes, to begin, that the Government responds to the Ninth Circuit's decision of Cornejo-Barreto I in a footnote that merely states that the Government believes that the "decision's commentary regarding APA review is incorrect," as well as being non-binding dicta. (Gov't Br. Supp. Federal Resp'ts Mot. Dismiss, at 28 n.10.) To the extent that the commentary

---

States,' not simply when the dismissal is necessary or advisable to those interests. This standard fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review." Webster, 486 U.S. at 600, 108 S. Ct. at 2052. The Court finds such discretionary language to be entirely different than the language in the CAT, in that the CAT uses mandatory language such as "No state shall . . . extradite . . ."

in Cornejo-Barreto I is dicta, in that the Secretary in that case had not yet made a final decision as to extradition, this Court finds it to be persuasive, if non-binding, authority. The Court also notes that this decision in Cornejo-Barreto I -- which was not vacated by the Ninth Circuit despite the Government's request to do so when the requesting county withdrew its extradition request, see Cornejo-Barreto v. Siefert, 389 F.3d 1307, 1307 (9th Cir. 2004) (en banc) ("We deny the government's request to vacate other published opinions in this case."), -- is the closest applicable precedent to the instant matter and the only precedent from an appellate court concerning judicial review of an extradition decision decided after the passage of the FARR Act. No appellate court decision has specifically rejected the reasoning adopted by the Ninth Circuit in favor of the Government's position.

Additionally, several of the authorities the Government cites in its memorandum specifically support the position elucidated in Cornejo-Barreto I and not the Government's position. For example, the Government cites to Prasoprat v. Benov, 421 F.3d 1009, 1016 (9th Cir. 2005) for the proposition that the courts must adhere to the Rule of Non-Inquiry regarding any humanitarian arguments against extradition, and that any such arguments are only for the consideration of the Department of State. It is true that the Ninth Circuit in Prasoprat decided that prior to the Secretary's final order, magistrate judges certifying an extradition and federal judges hearing habeas petitions as to the magistrate judge's certification may not hear humanitarian arguments. Id. However, the very next line in that decision states that, "We note, however, that in light of legislation implementing the United Nations Convention against

17

Torture, the rule of non-inquiry does not prevent an extraditee who fears torture upon surrender to the requesting government from petitioning for habeas corpus review of the Secretary of State's decision to extradite him." Id. at 1016 n.5. Similarly, the Government cites to Blaxland v. Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1208 (9th Cir. 2003) for the idea that judicial oversight could interfere with foreign policy and threaten the extradition system. However, Blaxland also states that "potential abuses in the requesting country rising to the level of torture are reviewable by American courts" and then cites to Barapind v. Reno, 225 F.3d 1100, 1106 (9th Cir. 2000), which in turn both cites to Cornejo-Barreto I and states that torture determinations by the Secretary are reviewable under the APA. Blaxland, 323 F.3d at 1208. Accordingly, the Government's own authority would allow this Court to review whether the Secretary's torture determination as to Petitioner was "arbitrary, capricious, or not in accordance with law."

To the extent that the Government makes arguments concerning the applicability of the APA that could be read as attacking the position of the Ninth Circuit in Cornejo-Barreto I, in that these arguments address language in the APA not specifically considered in Cornejo-Barreto I, the Court finds these arguments without merit. For example, as previously stated, the Government has several arguments that concern the long-standing history of the APA and of the Rule of Non-Inquiry, and how that long history requires this Court to find that there is no review under the APA. However, the Court notes that there is no controversy that prior to the adoption of the FARR Act that judicial review of extradition decisions of the Secretary were

18

precluded.  See Peroff v. Hylton, 563 F.2d 1099, 1102 (4th Cir. 1977).  It is the history of the FARR Act, and not the history of the APA, that matters to this Court, and after the adoption of the FARR Act, APA review would appear to be available.  The FARR Act states that "nothing in this section shall be construed as providing any court *jurisdiction* to consider or review claims raised under the Convention."  FARR Act, § 2242(d) (emphasis added).  It does not specifically preclude habeas jurisdiction.  "Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal."  INS v. St. Cyr, 533 U.S. 289, 299, 121 S. Ct. 2271, 2278-79 (2001).

The Court finds that INS v. St. Cyr, although not a case concerning extradition or the CAT, is instructive in this case.  In St. Cyr, the U.S. Supreme Court considered the preclusive effect of statutory language in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") that said: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" certain enumerated criminal offenses.  Id. at 311.  The court then considered the fact that the phrases "judicial review" or "jurisdiction to review" and the phrase "habeas corpus" have "historically distinct meanings" particularly in the immigration and extradition context.  Id. at 311; Terlinden v. Ames, 184 U.S. 270, 278, 22 S. Ct. 484 (1902) (under extradition statute then in affect, no right to judicial review but habeas review available); Heikkila v. Barber, 345 U.S. 229, 235, 73 S. Ct. 603, 606 (1953).  Accordingly, the court found that Congress had not

19

clearly barred jurisdiction based upon the habeas statute.  See St. Cyr,  533 U.S. at 312-13, 121

S. Ct. at 2286 ("[N]either provision speaks with sufficient clarity to bar jurisdiction pursuant to

the general habeas statute.")

Subsequent to St. Cyr, Federal courts applied that decision to allow habeas claims by

aliens fighting deportation where the Board of Immigration Appeals ("BIA") had allegedly failed

to properly review their CAT claims under the FARR Act.  See, e.g., Auguste v. Ridge, 395 F.3d

123, 138 n.13 (3d Cir. 2005); Ogbudimkpa v. Ashcroft, 342 F.3d 207, 215-16 (3d Cir. 2003); Singh

v. Ashcroft, 351 F.3d 435, 441 (9th Cir. 2003).  For example, in Singh, the Ninth Circuit

considered the language of the FARR Act.  The Government argued that the FARR Act

precluded all review of decisions of the BIA to deport aggravated felons.  However, the Ninth

Circuit instead rejected the Government's argument, citing to St. Cyr.  Id. at 441.  Instead, the

court concluded that habeas corpus was available to the individual fighting deportation because

the FARR Act did not bar it.[5]

In apparent response to the St. Cyr decision, and those decisions such as Singh, Congress

in May 2005 enacted the REAL ID Act of 2005,[6] which included a provision adding language to

8 U.S.C. § 1252 to bar "habeas review" and specifically limit habeas review of *orders of removal*

_____

[5] The court then considered Petitioner Singh's evidence as to potential torture upon
return to India, but rejected his claim based upon the lack of any direct threat against him
personally.

[6] REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (to be codified as 8 U.S.C.
§ 1252(a)(2)(D)).

20

under the CAT. See Hamid v. Gonzales, 417 F.3d 642, 647 (7th Cir. 2005); Kamara v. Attorney

General of the United States, 420 F.3d 202, 209 (3d Cir. 2005); 8 U.S.C. § 1252(a)(4) (2005)

("Notwithstanding any other provision of law (statutory or nonstatutory), including section

2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title,

a petition for review filed with an appropriate court of appeals in accordance with this section

shall be the sole and exclusive means for judicial review of any case or claim under the [CAT]

. . .").[7] Congress, despite having had the Cornejo-Barreto I decision in force in the Ninth Circuit

since 2000, did not similarly amend the FARR Act to specifically preclude habeas review of

extradition decisions.

After examining the arguments on both sides, the Court finds that Petitioner has the

better of the argument, based upon the reasoning in Cornejo-Barreto I.[8] See Arambasic v.

_____

[7] Prior to the enactment of the REAL ID Act, 8 U.S.C. § 1252 read in applicable part:
(2) Matters not subject to judicial review
      (A) Review relating to section 1225(b)(1): Notwithstanding any other provision
of law, no court shall have jurisdiction to review – . . ."
After enactment of the REAL ID Act, the same section read in applicable part:
(2) Matters not subject to judicial review
      (A) Review relating to section 1225(b)(1): Notwithstanding any other provision
of law (statutory or nonstatutory), including section 2241 of Title 28, or any other *habeas corpus*
provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review –
. . ." (emphasis added).

[8] Because the Court has found that Cornejo-Barreto I applies, the Court need not consider
Petitioner's other arguments concerning whether the CAT is self-executing. The Court agrees
with the Government, however, that all arguments concerning whether Petitioner is the
individual sought by the State of Romania are foreclosed by this Court's findings in its
November 9, 2004 Order approving the magistrate judge's certification of Petitioner to the
Secretary of State for the purpose of extradition.

Ashcroft, No. 03-4194, 2005 WL 3132479, *12 (D.S.D. Nov. 18, 2005) (Acknowledging continued vitality of Cornejo-Barreto I and habeas review of CAT claims); Prasoprat, 421 F.3d at 1016 (same); but see Hoxha v. Levi, 371 F. Supp. 2d 651, 660 (E.D. Pa. 2005) (stating that "[t]he Secretary's decision . . . is not subject to judicial review" and citing 22 C.F.R. § 95.4, without any discussion of Cornejo-Barreto I). Accordingly, the Court will deny the Government's Motion to Dismiss. The Court, for purposes of *in camera* review, will require that the Government produce the administrative record considered by the Secretary with respect to the question of whether or not Petitioner would be subject to torture upon returning to Romania, so as to provide review as to whether the Secretary's determination was "arbitrary, capricious, or not in accordance with law." The Court stresses that this review will not consist of a *de novo* review of the record -- the Court will not substitute its opinion for the Secretary's as to whether Petitioner would face torture upon return to Romania -- but will merely determine whether the Secretary did, in fact, consider Petitioner's evidence, if only to subsequently and validly reject it. All documents produced by the Government may be filed under seal, so as to reduce any concerns as to foreign policy.

VI.    CONCLUSION

    For the reasons stated herein, Petitioner's Motion for Bail Pending Appeal is DENIED. The Government's request to dismiss Secretary of State Condoleezza Rice from this matter and restyle the caption is GRANTED. The Government's Motion to Dismiss Petition for Writ of Habeas Corpus [Document #10] is DENIED. Accordingly, the Government is ORDERED not

22

to surrender Petitioner at this time to Romanian authorities and is additionally ORDERED to turn over the administrative record considered by the Secretary for an *in camera* inspection by this Court, so that the Court may conduct an appropriate APA review.[9]

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 20th day of January, 2006.

United States District Judge

---

[9] Given the significance of the Court's ruling in this matter, the Court will entertain a Motion by Respondents to stay enforcement of the Order pending timely appeal of the Court's decision herein.